UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-cv-07245-MRP-JEM | Date | April 13, 2015 |
|---|---|---|---|
| Title | *The California Institute of Technology v. Hughes Communications, Inc., et al.* | | |

| Present: The Honorable | **MARIANA R. PFAELZER** | |
|---|---|---|
| Isabel Martinez | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:**　　　**(In Chambers)**

### ORDER GRANTING IN PART AND DENYING IN PART
### HUGHES' MOTION TO STRIKE

Hughes moves to strike portions of Dr. Stephen B. Wicker's expert report on two bases: (1) the report discusses instrumentalities not explicitly analyzed in Caltech's infringement contentions; and (2) the report discusses the doctrine of equivalents, even though Caltech's infringement contentions fail to disclose a doctrine of equivalents theory for any accused product. Having considered Hughes' Motion to Strike Portions of the Expert Report of Dr. Stephen B. Wicker Regarding Infringement and Caltech's opposition to the motion, the Court grants in part and denies in part Hughes' motion.

This Court requires infringement and invalidity contentions so that the parties are aware of each other's theories early in the case. This requirement allows parties to adequately defend against these theories. Consistent with this rationale, parties must "proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). This Court's rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Id.* In determining whether to strike the challenged portions of Dr. Wicker's report, this Court must consider whether the report advances a new theory, or whether "the challenged report section merely provides an evidentiary example or complementary proof in support" of the infringement contentions. *Genentech, Inc. v. Trustees of Univ. of Penn.*, No. C 10-2037 LHK PSG, 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-07245-MRP-JEM | Date | April 13, 2015 |
|---|---|---|---|
| Title | *The California Institute of Technology v. Hughes Communications, Inc., et al.* | | |

Hughes moves to strike the portions of Dr. Wicker's expert report that discuss instrumentalities and theories not explicitly analyzed in Caltech's infringement contentions. It is undisputed that Caltech did not address in its infringement contentions a number of instrumentalities and theories discussed by Dr. Wicker. Caltech created specific infringement theories for only fifteen products in its infringement contentions: HN9800 Satellite Router, HN9600 Satellite Router, HN9460 Satellite Router, HN9260 Satellite Router, HN7740S Broadband Satellite Router, HN7700S Satellite Router, HN7000 Satellite Modem, HX200 Broadband Satellite Router, HX50L Broadband Satellite Router, HX Gateway, HX90 Broadband Satellite Router, HX260 Mesh/Star Broadband Router, HX280 Mesh/Star Broadband Router, HX System TGW100, and Hopper Set-Top Satellite TV Box. Dkt. No. 37 at 2-3. The theory of infringement for these products was based solely on the DVB-S2 standard. Caltech "reserve[d] its right to supplement this disclosure to include any additional products it identifie[d] through discovery and its continuing investigation." *Id.* at 3. But Caltech has never successfully amended its infringement contentions to add the instrumentalities or theories discussed by Dr. Wicker. Caltech is limited to the theories of infringement discussed in its infringement contentions. It is irrelevant that newly accused components may appear in the above products. Caltech's infringement contentions do not discuss the specific operation of these components or create a theory of infringement for these components.

Hughes would be prejudiced if the Court allowed Caltech to accuse further instrumentalities and create new theories for the first time in an expert report, especially at this late stage of the litigation. The Court's Standing Order is clear that a party must accuse specific instrumentalities in its infringement contentions and provide claim charts showing where each limitation of a claim is found within the instrumentality. *See* Dkt. No. 20. This requirement ensures that a defendant is fully aware of all the instrumentalities it must defend against the charge of infringement and the theories behind the alleged infringement. Caltech's infringement contentions explain only how certain products implementing the DVB-S2 standard may infringe the patents-in-suit. Thus, Caltech is limited to arguing a theory of infringement for these products based only on the DVB-S2 standard. Dr. Wicker's expert report impermissibly goes beyond discussing DVB-S2 and the specifically accused products. Caltech cannot overcome the obvious prejudice against Hughes that results from Caltech's failure to disclose the all of its infringement theories.[1] Although Caltech contends that Hughes became aware that Caltech

---

[1] Caltech argues that Hughes was aware of the instrumentalities discussed in Dr. Wicker's report because, in response to an interrogatory, Hughes had "concede[d]" these instrumentalities were accused. Caltech's Opp'n at 13. Hughes did no such thing. While Hughes identified instrumentalities aside from the fifteen mentioned in Caltech's infringement contentions, Hughes expressly objected to Caltech's definition of "Accused Products" as overbroad. *See* Hathorn Decl., Ex. 1 at 3. Caltech's argument is a mischaracterization of Hughes' response.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-07245-MRP-JEM | Date | April 13, 2015 |
|---|---|---|---|
| Title | *The California Institute of Technology v. Hughes Communications, Inc., et al.* | | |

planned to accuse these additional components, there is no significant evidence suggesting this awareness. Moreover, even if Hughes were aware of Caltech's intentions, Hughes had no duty to inform Caltech that Caltech's infringement contentions were inadequate to support accusing these new components. Thus, Hughes is mostly correct that Dr. Wicker's report unreasonably exceeds the scope of the infringement contentions.[2]

Hughes also objects that Dr. Wicker discusses the doctrine of equivalents, which Caltech failed to discuss adequately in its infringement contentions. Caltech made only a bare mention of the doctrine of equivalents in its infringement contentions, stating only that "[t]o the extent that any element or limitation of the asserted claims is not found to have a literal correspondence in the Accused Instrumentalities, Caltech alleges, on information and belief, that any such elements or limitations are present under the doctrine of equivalents in the Accused Instrumentalities." Dkt. No. 37 at 4. The Court's Standing Order requires the party to address "whether the claim is alleged to be literally present or present under the doctrine of equivalents in each Accused Instrumentality." Dkt. No. 20 at 2. Caltech failed to identify how each accused instrumentality infringed the patents-in-suit under the doctrine of equivalents. For the same reasons stated above, Hughes would suffer prejudice if the Court allowed Caltech to introduce a previously undisclosed doctrine of equivalents theory at this stage of the litigation.

Therefore, in accordance with the Court's above analysis, the Court strikes the following paragraphs from Dr. Wicker's report: ¶¶ 15, 17, 18, 19, 20, 21, 22, 23, 27, 182-195, 212, 215, 217, 270, 271, 273, 317, 328, 357, 379-701. Based on the understanding that Exhibits C-1 through C-9 contain source code for instrumentalities not in the infringement contentions, the Court strikes these exhibits.

**IT IS SO ORDERED.**

---

[2] Hughes is incorrect, however, that Dr. Wicker improperly discusses the Jupiter / Gen4 system in ¶ 30 of his expert report. Dr. Wicker concedes that the system is not accused in this litigation and discusses it to "reserve the right to supplement" his opinions. Wicker Report ¶ 30.