QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 083188)
jimasperger@quinnemanuel.com
Bryan C. Hathorn (Bar No. 294413)
bryanhathorn@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff*
*California Institute of Technology*

[LIST OF COUNSEL CONTINUED ON NEXT PAGE]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA INSTITUTE OF TECHNOLOGY, a California corporation,<br>         Plaintiff,<br><br>     vs.<br><br>HUGHES COMMUNICATIONS, INC., a Delaware corporation, HUGHES NETWORK SYSTEMS, LLC, a Delaware limited liability company, DISH NETWORK CORPORATION, a Nevada corporation, DISH NETWORK L.L.C., a Colorado limited liability company, and DISHNET SATELLITE BROADBAND L.L.C., a Colorado limited liability company,<br>         Defendants. | CASE NO. 2:13-CV-7245 MRP (JEM)<br><br>**CALTECH'S STATUS REPORT**[1]<br><br>Hearing Date: June 9, 2015<br>Time:         2:00 pm<br>Location:    Telephonic<br><br>312 N. Spring Street<br>Los Angeles, CA |

---

[1] Caltech's understanding is that the June 9, 2015 Status Conference is for both Case No. 2:13-CV-7245-MRP-JEM and Case No. 2:15-CV-1108-MRP-JEM. We have filed the same status report on both dockets.

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
3  Mark Yeh-Kai Tung (Bar No. 245782)
4  marktung@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
5  Redwood Shores, California 94065
6  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
7
8  Edward J. DeFranco (Bar No. 165596)
   eddefranco@quinnemanuel.com
9  Eric Huang (admitted pro hac vice)
10 erichuang@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
11 New York, New York 10010
12 Telephone: (212) 849-7000
   Facsimile: (212) 849-7100
13
14 *Attorneys for Plaintiff*
   *California Institute of Technology*
15

16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 2:13-CV-7245 MRP (JEM)
CALTECH'S STATUS REPORT

## I.
## INTRODUCTION

Caltech respectfully submits this Status Report in order to identify for the Court issues Caltech believes should be addressed at the Status Conference on June 9th. Caltech also respectfully submits its recommendation of next steps for determining whether this case can be resolved, and, if not, how it should be tried.

Both the *Caltech I* and *Caltech II* cases[2] are centered on whether Defendants' satellite internet products and services infringe Caltech's patents for error correction code – specifically Caltech's invention of Irregular Repeat Accumulate codes, as set forth in the four Caltech patents-in-suit. In general terms, Caltech's invention increases the bandwidth, speed and capacity of satellite signals, resulting in better service for consumers and material cost savings and additional profits to Defendants. *Caltech I* focuses on products and services arising from Defendants' encoders and decoders of satellite signals that are encompassed by the HN and HX series of products. *Caltech II* is directed at the HT products and services, which are a separate line of products and services offered by Defendants. Caltech contends that since the *Caltech I* trial is off calendar, the rational and efficient course of action is for these cases to be tried together, if the Court agrees that Caltech did not improperly "split its cause of action" in *Caltech I and II*.

Accordingly, with the goal of resolving the key issues in dispute and moving forward in the most efficient and practical manner, Caltech proposes the following:

1. The Court should set a briefing and hearing schedule to address the issues of consolidation and claim splitting, if the Court would like to invite briefing on this issue, as the two are integrally related.

---

[2] *Caltech I* refers to Case No. 2:13-CV-7245-MRP-JEM. *Caltech II* refers to Case No. 2:15-CV-1108-MRP-JEM.

2. The Court should direct the parties to meet and confer about supplemental damages reports.

3. The Court should order further settlement discussions among the parties, either through continued private mediation or under the supervision of this Court, at a mutually convenient date.

As explained in more detail below, Caltech believes that the briefing and resolution of the issues above will be important in determining whether this case will settle or go to trial. If a trial is required, this schedule will substantially narrow the remaining trial issues, avoid redundant trials on issues common to both cases, and enable the Court and the parties to proceed in the most efficient and expeditious manner.

## II.
### THE COURT SHOULD SET A SIMULTANEOUS BRIEFING AND HEARING SCHEDULE FOR THE CLAIM SPLITTING AND TRIAL CONSOLIDATION ISSUES

The Court's recent order in response to Caltech's motion for consolidation expressed a concern about the issue of "claim splitting." *Caltech II* Dkt. 40. The Court said it "may invite briefing on this issue" and that Caltech "may renew" its motion for consolidation "at a later time if circumstances change." *Id*. Given the Court's interest in the alleged "claim splitting" issue, Caltech believes that it would be most efficient to address this issue promptly through briefing and a hearing, along with the issue of whether consolidation is appropriate. These issues are inextricably related, and the Court issued its order on consolidation without having the benefit of Caltech's response to what Caltech contends are legal and factual inaccuracies in Defendants' opposition, and without the benefit of a hearing. Caltech also contends that Defendants' opposition fails to address important distinctions between *Caltech I* and *Caltech II*, and fails to acknowledge that Defendants themselves, through the positions they took in discovery including their

decisions to not produce key documents and information Caltech requested, are largely responsible for there being two separate lawsuits.

At the core of the parties' dispute over consolidation and claim splitting is the scope of accused products in *Caltech I* and *Caltech II*.  In *Caltech I*, Caltech accused the HN and HX products and services as infringing.  Caltech filed its First Amended Complaint ("FAC") on March 6, 2014.  *Caltech I* Dkt 29.  In that complaint, Caltech specifically accused "the HN System and HX System product lines" as infringing, together with the "network and network services that employ these products, and/or marketing, consulting, and/or support services provided for these products and services."  FAC at 10-27. Caltech similarly accused the HN and HX product lines and services as infringing in its infringement contentions, which were filed on April 1, 2014.  *Caltech I* Dkt 37.  Caltech did not accuse any HT products or services as infringing in either its FAC or infringement contentions because it was unable to identify any public information at that time that it deemed sufficiently credible to name the HT products and services as infringing.  Caltech acted diligently and conscientiously, with the goal of responsibly naming accused products and not overreaching, consistent with its Rule 11 obligations.  Based on the public information available at the time of filing, Caltech determined that the HN and HX series products encoded and decoded satellite signals consistent with the DVB-S2 standard, and therefore were properly the subject of a patent infringement lawsuit.  During discovery in *Caltech I*, Caltech sought discovery on the HT products and services, with the goal of ascertaining whether they were also infringing.  But Defendants vigorously fought to limit *Caltech I* to only the HN and HX products identified by name in Caltech's infringement contentions, and refused to produce discovery pertaining to the HT products and services.  Indeed, Defendants repeatedly contended that HT products and services were not part of that case.

Late in the course of discovery when Defendants presented their technical 30(b)(6) witness in December 2014, Caltech first received what it believed was credible and reliable information about the infringing nature of Defendants' HT products and services. Caltech promptly moved to compel documents with respect to those products. *Caltech I* Dkt. 197. Defendants objected and fought to preclude such discovery, describing the HT products and services as "an entirely new class of products." *Id*. at 26. The Court ultimately denied Caltech's motion to compel. *Caltech I* Dkt. 187. As a result, after conducting further diligence, Caltech became comfortable that it could accuse the HT products and services as infringing. Caltech promptly thereafter filed *Caltech II*, which focuses on the separate and distinct HT products and services that Defendants themselves sought to exclude from *Caltech I*.

In their opposition to Caltech's Motion to Consolidate, Defendants, in Caltech's view, did not set forth an accurate characterization of the procedural history and prior Court's orders in this case. For example, Defendants inaccurately portray the Court's prior orders as "repeatedly" denying Caltech's attempts to accuse the HT products and services in *Caltech I*. *Caltech II* Dkt. 30. In fact, none of the prior orders pertain to the HT products and services, except for the order denying Caltech's motion to compel discovery described above. In addition, Caltech's motion to amend its complaint had nothing to do with the HT products and services—instead, that motion sought to accuse television broadcast products unrelated to broadband satellite internet products. Similarly, the Court's Order striking portions of Caltech's expert Dr. Wicker's report was limited to other products, and not the HT products and services. *Caltech I* Dkt. 367.

Because the HT products and services are not within the scope of *Caltech I*, and because Defendants vigorously fought to preclude discovery about these products and services and the Court denied Caltech's motion to compel, Caltech contends that it is entitled to pursue its claims against these products and services in

*Caltech II*.  When the facts are fully considered, there is no credible basis to preclude Caltech from pursuing its claims against the HT products and services. Nor is there any credible theory of improper claim splitting.  For example, the HT products and services are a separate product and service line from the HN and HX services and products.  They are distributed to customers according to a different business model.[3]  They use a different chip to control their operations and implement the DVB-S2 standard.  Caltech, to date, has had no access to the source code for these chips because Defendants have refused to make it available, but that source code is presumably different as well.

For all of these reasons, and others that will be the subject of further briefing should the Court request it, Caltech contends that there is no improper claim splitting relating to the HT products and services, and that Caltech is entitled to obtain the discovery into the operation of these products and services and to pursue its allegations that these products and services are infringing.  Accordingly, Caltech respectfully submits that the claim splitting and consolidation issues should be addressed together because they are inextricably intertwined and consideration of both simultaneously will lead to the most efficient management of this case. Although the HT products and services are separate and distinct from the HN and HX products and services that are the subject of *Caltech I*, the patents they infringe are the same, many of the witnesses are the same, many of the experts will be the same, and both sets of products and theories involve the implementation of the DVB-S2 standard.

Accordingly, Caltech proposes the following briefing schedule for the claim splitting and consolidation issues:

---

[3]   The HN and HX products were originally *sold* to users in conjunction with satellite communications services. In contrast, Hughes has now transitioned to a primarily service-based business model and the HT products are *leased* to subscribers to Hughes' broadband communications service.

June 23:     Caltech's opening brief

July 8:      Defendants' Opposition brief

July 20:     Caltech's reply brief

TBD:         Hearing

## III.
## DAMAGES

In the Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (*Caltech I* Dkt. 371), the Court ruled that Caltech's damages theory, which apportioned damages through its application of the royalty rate, did not comport with recent Federal Circuit Court cases holding that juries can be misled when undue emphasis is placed on the value of the entire product. *Ericsson, Inc. v. D-Link Systems*, 773 F.3d 1201 (Fed. Cir. 2014). As a result, the Court may also wish to address the issue of the submission of supplemental expert damages reports at the status conference. Caltech contends that the case law is clear that it is entitled to submit supplemental damages reports that address the reasoning in the Court's summary judgment order. *See, e.g.*, *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C 11-05973 PSG, 2013 WL 4538210, at *5 (N.D. Cal. Aug. 22, 2013) ("On balance, and in consideration of its due process rights, the court is loathe to leave Dynetix stripped of any damages expert testimony whatsoever."); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 284 (N.D.N.Y. 2009) (Rader, J.) (permitting plaintiff to submit a revised damages theory in mid-trial after striking plaintiff's damages expert opinion); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014). Caltech respectfully requests the Court to direct the parties to meet and confer regarding a schedule and process for such supplemental reports.

# IV.
# SETTLEMENT

The parties have engaged in one in-person settlement negotiation moderated by a private mediator, followed by several calls between the mediator and each of the parties separately.   While the parties have not reached resolution of the dispute, Caltech believes it would be productive for the Court to direct the parties to engage in further in-person mediation discussions, through either the private mediator or a Court supervised settlement negotiation.

# V.
# CONCLUSION

Caltech has submitted this status report to aid the Court in arriving at an efficient procedure to address what it believes are key issues pertaining to *Caltech I* and *Caltech II*.   Caltech will be prepared at the status conference to address the Court's questions and issues, as well as the future schedule for these cases.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: June 8, 2015 | Respectfully submitted, |
| 3 | | |
| 4 | | |
| 5 | | By  */s/James R. Asperger* |
| 6 | | James R. Asperger |
| 7 | | jimasperger@quinnemanuel.com |
| | | QUINN EMANUEL URQUHART & |
| 8 | | SULLIVAN, LLP |
| 9 | | 865 S. Figueroa St., 10th Floor |
| | | Los Angeles, California 90017 |
| 10 | | Telephone:   (213) 443-3000 |
| 11 | | Facsimile:   (213) 443-3100 |
| 12 | | *Attorneys for Plaintiff California Institute of Technology* |